IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
ENTERED

FEB 2 1 2007

Michael N. Milby, Clerk of Court
By Deputy Clerk

| | |
|---|---|
| THOMAS G. ROBERTS & <br> MELL H. ROBERTS, <br><br>   Movants, <br><br> v. <br><br> A.G. EDWARDS & SONS, INC., <br><br>   Respondent. | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br>   MISCELLANEOUS CASE NO. B-06-17 |

## OPINION & ORDER

BE IT REMEMBERED that on February 2̲1̲, 2007, the Court **GRANTED** Movants' Motion to Confirm Arbitration Award and Motion for Judgment, Dkt. No. 1, and **DENIED** Respondent's Motion to Vacate Arbitration Award, Dkt. No. 5.

## I. Background

### A. Factual

  This case arises out of a brokerage arrangement between Thomas G. Roberts and Mell H. Roberts (the "Movants") and A.G. Edwards & Sons, Inc. ("Respondent"). *See* Dkt. No. 1, Ex. 1, at 3, 20; Dkt. No. 5, Ex. 2, at 2. Beginning in 1987, Movants began investing for their retirement. Dkt. No. 1, Ex. 1, at 3, 20; Dkt. No. 5, Exs. 2A–2G. Movants, however, "did not have substantial knowledge of the stock market or significant experience with securities investing" and therefore engaged Respondent as a "professional investment advisor." Dkt. No. 1, Ex. 1, at 3, 20.

  In 1999, Movants, both residents of Rancho Viejo, Texas, transferred their account to Respondent's office in Brownsville, Texas. *Id.* at 2, 3, 20; Dkt. No. 5, Ex. 2, at 2. At the same time, Movants' financial advisor retired, and Respondent assigned Juanita H. Anderson as Movants' new consultant. Dkt. No. 1, Ex. 1, at 3, 20; Dkt. No. 5, Ex. 2, at 3.

Movants informed Respondent that their "investment goals were protection of the principal and growth of their investments" and that they "were willing to accept a moderate risk to their principal." Dkt. No. 1, Ex. 1, at 3, 20. Their broker told "them 'they could expect a normal increase in their accounts.'" *Id.* Over the course of Movants' financial relationship with Respondent, they opened several separate accounts, two of which are at issue in this case — one in Thomas G. Roberts' name alone, and the other jointly. *Id.* at 4, 20; Dkt. No. 5, Ex. 2, at 2; Dkt. No. 5, Exs. 2B, 2N; *see also* Dkt. No. 5, Exs. 2A, 2C, 2D, 2E.

In June of 2000, Respondents invested some of Movants' funds into variable annuities,[1] consisting primarily of growth funds. Dkt. No. 1, Ex. 1, at 4–5, 20; Dkt. No. 5, Ex. 2, at 3, 4; Dkt. No. 5, Exs. 2I, 2K, 2L, 2O, 2P, 2Q. These annuities involved aggressive growth stocks, meaning that the annuities entailed substantially higher risk and greater volatility than Movants' risk preference and objectives would suggest is appropriate. Dkt. No. 1, Ex. 1, at 5, 20. Each of these annuities experienced a substantial decrease in value between June 2000 and September 2002. *Id.* at 4–5, 20. Furthermore, during the downward trend in the value of these annuities, Respondent "continued investing" Movants' funds in them. *Id.* at 5, 20. Instead of divesting these funds from Movants' portfolio, Respondent told them "'not to sell' and to 'hang on.'" *Id.* at 6, 20.

## B. Procedural

In April 2004, Movants filed a claim with the New York Stock Exchange ("NYSE") based on the events described above. Dkt. No. 1, Ex. 1. Furthermore, Movants filed a Uniform Submission Agreement seeking arbitration of the case, and they specifically requested that the case be conducted pursuant to the NYSE's Simplified Arbitration procedures. *Id.* at 1.

In their Statement of Claim, Movants aver that Respondent violated the rules and regulations of both the NYSE and the National Association of Securities Dealers ("NASD"),

---

[1]Movants state that they "had no idea how a variable annuity functioned." Dkt. No. 1, Ex. 1, at 5, 20.

that Respondent violated stated and federal securities laws, and that Respondent violated other Texas laws. *Id.* at 1, 8–17. Movants contend that Respondent put their money into unsuitable investments, failed to react when it became clear that the value of the investments was declining, and thereby caused Movants to suffer avoidable losses. *Id.* at 1, 4–5. Based on these claims, Movants argued that they sustained $31,289 in damages and that Respondent inflicted punitive damages, costs, and attorneys fees on them. *Id.* at 1–2; Dkt. No. 1, Ex. 1-1, at 1–2. Movants' damages claims were supported by an affidavit submitted by their attorney. Dkt. No. 1, Ex. 1-1. They only sought damages in the amount of $25,000, however, as they sought the maximum award that can be awarded in a simplified arbitration proceeding. Dkt. No. 1, Ex. 1, at 2, 17.

Respondent filed its Answer and its Uniform Submission Agreement on June 15, 2004. Dkt. No. 5, Ex. 2. In its Answer, Respondent argued that Movants were educated investors who suffered no losses and, in fact, "experienced over $30,000 in gains." *Id.* at 1. Specifically, Respondent avers that, at the time Movants opened the accounts in issue, they informed their broker that they already owned two variable annuities and one fixed annuity. *Id.* at 3. In response to Movants' queries, their broker recommended the purchase of the annuities in question, provided them with prospectuses and discussed the annuities with them. *Id.* According to Respondent, Movants acknowledged that they understood the risks associated with these investments at that time. *Id.*

Also in its Answer, Respondent argued that Movants had no losses, because their annuities had a "guaranteed death benefit feature." *Id.* at 4. Respondent stated that Movants chose the specific investments that comprised these annuities, that they changed their investments on at least one occasion, and that they never complained about their investments to Respondent prior to the filing of this case. *Id.* at 3–5. Finally, Respondent averred that it did not have a fiduciary relationship with Movants and that it, and its broker, complied with all applicable rules and regulations at all times. *Id.* at 6–8.

On July 6, 2004, Respondent sent documents to the Movants, "[p]ursuant to the NYSE Discovery Guidelines." Dkt. No. 5, Ex. 3. The next day, July 7, 2004, Respondent issued its "First and Continuing Request for Information and Documents" to Movants, under Rule 619(b) of the NYSE's Arbitration Rules. Dkt. No. 5, Ex. 4. In this request,

Respondent sought production of information and documents primarily related to four issues: Movants' knowledge and understanding of their investments, their investment experience, their financial sophistication, and their acceptance of the risk inherent in their investments. *Id.*; Dkt. No. 5, at 6.

Movants never responded to Respondent's discovery request. Dkt. No. 5, at 3. Therefore, on December 15, 2004, Respondent mailed a follow-up letter to Movants, seeking responses to its request and informing Movants that it was prepared to file a Motion to Compel. Dkt. No. 5, Ex. 5. When the follow-up letter also went unanswered, Respondent sent a second letter, containing virtually identical information and requests as the first letter. Dkt. No. 5, Ex. 6.

On February 18, 2005, Respondent still had not received any documents or information from Movants. Dkt. No. 5, at 3. Respondent therefore filed a Motion to Compel with the arbitration department of the NYSE. Dkt. No. 5, Ex. 7.

Movants filed an answer to Respondent's Motion to Compel on February 22, 2005. Dkt. No. 5, Ex. 8. In their response, Movants argued that Respondent was not entitled to any discovery, because, under the rules for simplified arbitration proceedings, any discovery request was premature at that time. *Id.* at 1–2.

Movants requested an expedited hearing date on April 14, 2005. Dkt. No. 5, Ex. 9. Five days later, on April 19, they again requested "that a date be set for the decision to be handed down by the Arbitrator." Dkt. No. 5, Ex. 10. In response, Respondent, on April 26, 2005, requested "a pre-hearing conference with the arbitrator to set forth a discovery schedule and dates for additional submissions of the parties." Dkt. No. 5, Ex. 11, at 1. Respondent also argued that Movants had "refused to engage in the voluntary exchange of documents" under NYSE rules and the NASD Discovery Guide. *Id.*

On April 28, 2005, Movants sent a letter in response to Respondent's "request for a pre-hearing conference," stating that the request for a hearing date was made in error. Dkt. No. 5, Ex. 12. Movants did not want a hearing date. *Id.* Movants further averred that any discovery request was still premature under the rules for simplified arbitrations. *Id.*

It is not clear from the record what happened in this case over the course of the next year. It appears, however, that an arbitrator was appointed for this case on June 25, 2005,

-4-

but "she was subsequently removed as a result of a peremptory challenge."[2] Dkt. No. 5, Ex. 13. In addition, at some point Jeffrey Kilgore was appointed as the new arbitrator for this case, although the parties were not notified of that fact until June 1, 2006. *Id.* On that date, a letter was sent to the parties informing them of the appointment of Mr. Kilgore, as well as notifying them that the parties' contact person in the NYSE arbitration department had left and that the parties should address correspondence to Roy Rowsell, senior arbitration counsel for the NYSE. *Id.* Finally, the letter stated that "[d]iscovery should be concluded now and Mr. Kilgore is asked to render a decision on this case on June 21, 2006." *Id.*

The next day, June 2, 2006, Respondent replied to Mr. Rowsell's letter, informing him that discovery had not been concluded and that "Claimaint has refused to produce a single document." Dkt. No. 5, Ex. 14. Respondent also sought the imposition of sanctions against Movants for their "willful and intentional disregard for the NYSE Rules." *Id.*

In spite of their contentions regarding the state of discovery in the case, Respondent filed a Pre-Hearing Brief on June 16, 2006. Dkt. No. 5, Ex. 15. In this brief, Respondent argued each of its points and provided authority for each argument.

On June 21, 2006, Mr. Rowsell sent a letter to each of the parties and to Mr. Kilgore, in which "Mr. Kilgore [was] requested to consider the [motion to compel and Respondent's letter of June 2, 2006] and to get back to [Mr. Rowsell] with rulings prior to rendering any decision on the merits of the case." Dkt. No. 5, Ex. 16.

Movants responded to Respondent's letter of June 2, 2006 on June 23, 2006. Dkt. No. 5, Ex. 17. In their response, Movants once again argued that they were under no obligation to produce any documents to Respondent, because, according to Movants, the "Claim should be decided upon the pleadings and evidence filed by the parties" and the discovery request was pre-mature. *Id.*

The arbitrator decided the case on September 26, 2006. Dkt. No. 5, Ex. 18. In his decision, Mr. Kilgore awarded a total of $19,700 to Movants — $18,000 for their claims, $200 for return of their filing fee, and $1500 for costs. *Id.* The arbitrator also awarded the

---

[2]It is not clear who asserted the challenge.

Movants 7% interest on the $18,000 award, to be accumulated from July 1, 2005, until paid. *Id.* Finally, Respondent was charged $100 for NYSE forum fees. *Id.*

Less than one month after this decision was issued, on November 6, 2006, Movants filed their Motion to Confirm Arbitration Award and Motion for Judgment in this Court. Dkt. No. 1. On December 7, 2006, Respondent filed its Response to Motion to Confirm Arbitration Award and its Motion to Vacate Arbitration Award. Dkt. No. 5. As the grounds for its motion to vacate, Respondent argued that it was denied a full and fair hearing and that the arbitrator displayed bias and prejudice against it, based on the arbitrator's alleged failure to consider Respondent's discovery requests. *Id.* at 1–2, 6, 8. Movants responded to the motion to vacate on December 7, 2006, by arguing that the discovery requests were not timely and that there was no basis for vacating the arbitrator's award. Dkt. No. 6. Finally, Respondent replied to Movants' response to its motion to vacate on December 11, 2007, averring that the arbitrator's failure to address the Movants' refusal to produce any discovery was unduly prejudicial against it, that Movants did not explain how the arbitrator gave each party an adequate opportunity to present its evidence and arguments, and that the arbitrator acted outside the scope of his authority when he failed to honor the NYSE administrator's request that he get back to the parties with rulings on Respondent's discovery requests prior to ruling on the merits of the case. Dkt. No. 7.

## II.    Standard of Review

"Judicial review of an arbitration award is extraordinarily narrow," and the arbitrator's decision is to be given a high level of deference. *Forsythe Int'l, S.A. v. Gibbs Oil Co. of Tex.*, 915 F.2d 1017, 1020 (5th Cir. 1990) (quoting *Antwine v. Prudential Bache Sec., Inc.*, 899 F.2d 410, 413 (5th Cir. 1990)); *Weber v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 455 F.Supp.2d 545, 548 (N.D. Tex. 2006) (internal quotations omitted); *see also Kergosien v. Ocean Energy, Inc.*, 390 F.3d 346, 352 (5th Cir. 2004) (quoting *Prestige Ford v. Ford Dealer Computer Servs., Inc.*, 324 F.3d 391, 393 (5th Cir. 2003)).  A court may vacate an arbitrator's "award 'only on very narrow grounds,'" and "confirmation is 'usually routine or summary.'"  *Hasbro, Inc. v. Catalyst USA, Inc.*, 367 F.3d 689, 691–92 (7th Cir. 2004) (quoting *Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1288 (11th Cir. 2002)); *Weber*, 455

F.Supp.2d at 548 (quoting Brabham v. A.G. Edwards & Sons, Inc., 376 F.3d 377, 380 (5th Cir. 2004)). The primary question a court must ask is "whether the arbitration proceedings were fundamentally unfair." *Gibbs Oil Co. of Tex.*, 915 F.2d at 1020 (citing Teamsters, Local Union 657 v. Stanley Structures, Inc., 735 F.2d 903, 906 (5th Cir. 1984)); *Weber*, 455 F.Supp.2d at 549 (quoting *id.*). Even gross mistakes of fact or law[3] "do not authorize courts to annul awards," and the fact that an award is arbitrary and capricious is not "a ground for vacatur." *Brabham*, 376 F.3d at 382; *Weber*, 455 F.Supp.2d at 549 (quoting Mantle v. Upper Deck Co., 956 F.Supp. 719, 726 (N.D. Tex. 1997)). Rather, "[i]f an award is rationally inferable from the facts before the arbitrator, the award must be affirmed." *Kergosien*, 390 F.3d at 353 (citing *Antwine*, 899 F.2d at 412).

Furthermore, courts may not review an arbitrator's decision on the merits. *See Kergosien*, 390 F.3d at 357, 358 (quoting Major League Baseball Players Ass'n v. Garvey, 532 U.S. 504, 509, 510, (2001) (quoting United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 36 (1987))) ("Courts are not authorized to review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties' agreement;" "[C]ourts . . . have no business weighing the merits of the grievance [or] considering whether there is equity in a particular claim." (all alterations in original)). "Arbitrators have no obligation to the court to give their reasons for an award," and, "[e]ven when arbitrators do provide a rationale for their awards, courts may not review that reasoning." *Brabham*, 376 F.3d at 385 (citing Anderman/Smith Operating Co. v. Tenn. Gas Pipeline Co., 918 F.2d 1215, 1219 n.3 (5th Cir. 1990)); Refino v. Feuer Transp., Inc., 480 F.Supp. 562, 565 n.3 (S.D.N.Y. 1979) (quoting United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 598 (1960)).

## III.   Analysis

In this case, Movants seek confirmation of the arbitrator's award, and Respondent seeks vacatur of that award. *See* Dkt. Nos. 1, 5. Confirmation of an arbitration award is

---

[3]"Mistakes of law" include mistakes both in interpreting and in applying the law. *See Weber*, 455 F.Supp.2d at 549 (quoting *Mantle*, 956 F.Supp. at 726).

generally routine. *Hasbro*, 367 F.3d at 691–92 (quoting *Riccard*, 307 F.3d at 1288). Therefore, Respondent must establish a basis for vacating the award, or Movants' motion must be granted and the award must be upheld. *See Weber*, 455 F.Supp.2d at 549 ("The party moving to vacate an arbitration award has the burden of proof.").

Respondent urges several grounds in support of its Motion to Vacate. Dkt. No. 5, at 5–8. Respondent argues that it was denied a full and fair hearing, that the arbitrator displayed bias and prejudice against it, that it was prejudiced by the arbitrator's failure to consider its discovery requests, that it was not given the opportunity to present evidence, and that the arbitrator exceeded the scope of his authority when he failed to provide the parties with his ruling on Respondent's discovery requests prior to issuing his ruling on the merits of the case. *Id.* at 1–2, 6, 8; Dkt. No. 7, at 1, 3–4. Essentially, Respondent contends that it was deprived a fair hearing because it did not receive its requested discovery from Movants. The Court will therefore consider whether any of Respondent's arguments and corresponding evidence establish that the arbitration was "fundamentally unfair."

### A. Allegations of Fundamental Unfairness

When reviewing an arbitration award, a court must determine whether the arbitration proceedings were "fundamentally unfair." *See Gibbs Oil Co. of Tex.*, 915 F.2d at 1020; *Weber*, 455 F.Supp.2d at 549, 553. Only three elements are necessary to establish fundamental fairness: "notice, an opportunity to present relevant and material evidence and arguments to the arbitrators, and an absence of bias on the part of the arbitrators." Louisiana D. Brown 1992 Irrevocable Trust v. Peabody Coal Co., 205 F.3d 1340, No. 99-3322, 2000 WL 178554, *6 (6th Cir. Feb. 8, 2000) (unpublished table decision) (citing Bowles Fin. Group, Inc. v. Stifel, Nicolaus & Co., 22 F.3d 1010, 1013 (10th Cir. 1994)); Nationwide Mutual Ins. Co. v. Home Ins. Co., 278 F.3d 621, 625 (6th Cir. 2002) (quoting *id.*). If the proceedings were fundamentally unfair, the award should be vacated. Otherwise, the award should be confirmed.

The Fifth Circuit recognizes six grounds upon which an arbitration award can be vacated — four statutory and two nonstatutory. *See Kergosien*, 390 F.3d at 353. The

statutory bases are found in 9 U.S.C. § 10:

> (a) In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration —
>
> > (1) Where the award was procured by corruption, fraud, or undue means.
> >
> > (2) Where there was evident partiality or corruption in the arbitrators, or either of them.
> >
> > (3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.
> >
> > (4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). Besides the four statutory grounds, "manifest disregard of the law and contrary to public policy are the only nonstatutory bases recognized by [the Fifth Circuit] for vacatur of an arbitration award." *Kergosien*, 390 F.3d at 353.

In its Motion to Vacate, Respondent specifically asserts 9 U.S.C. § 10(a)(3) as a ground for vacating the award in this case. Dkt. No. 5, at 5–8. In support of this assertion, Respondent argues that it did not have "an adequate opportunity to present its evidence and argument," that the arbitrator failed to insure that it received access to all relevant documentary evidence, that relevant documents were withheld from it in violation of NYSE discovery rules, that the arbitrator failed to address its discovery requests, and that, as a result, it was "unduly prejudiced in its ability to defend itself." *Id*. Thus, the Court will concentrate its analysis on § 10(a)(3). Nonetheless, the Court will also analyze Respondent's assertions to determine whether they support vacatur under any of the other grounds.

### B. Discovery Rules in Simplified Arbitrations

Respondent spends considerable time and effort discussing NYSE Rule 619(a). *Id*. at 2–5, 6. This case, however, involves a simplified arbitration. *See* Dkt. No. 1, Ex. 1, at 1. Simplified arbitrations are governed by NYSE Rule 601. That Rule states that, "*[e]xcept*

*as otherwise provided herein*, the general arbitration rules of the Exchange shall be applicable to proceedings instituted under this Rule." NYSE RULE 601(j), *available at* http://rules.nyse.com/NYSE/NYSE_Rules/ (follow "Arbitration Rules" hyperlink) (emphasis added). The Rule contains two provisions related to discovery. First, NYSE Rule 601(f) states: "Unless the public customer demands or consents to a hearing, or the arbitrator(s) calls a hearing, the arbitrator shall decide the dispute, claim or controversy solely upon the pleadings and evidence filed by the parties." Second, under subsection h:

> (i) The arbitrator shall be authorized to require the submission of further documentary evidence as he, in his sole discretion [sic] deems advisable.
> (ii) If a hearing is demanded or consented to in accordance with Section 601(f), the General Provision Governing a Pre-Hearing Proceeding under Rule 619 shall apply.
> (iii) If no hearing is demanded or consented to, all requests for document production shall be submitted in writing to the Director of Arbitration within ten (10) business days of notification of the identity of the arbitrator selected to decide the case. . . . The selected arbitrator shall resolve all requests under this section on the papers submitted.

NYSE RULE 601(h). No hearing was demanded by the Movants, and the arbitrator did not call a hearing. Thus, Rule 601 provides the exclusive discovery provisions for this simplified arbitration proceeding, and Rule 619 is inapplicable to this case.

Without the benefit of NYSE Rule 619, the arbitrator was required to decide this case "solely upon the pleadings and evidence filed by the parties." NYSE RULE 601(f). He also had sole discretion to require additional evidence to be submitted. NYSE RULE 601(h)(i). Finally, Respondent was permitted to submit requests for production to the Director of Arbitration, which requests the arbitrator was required to resolve "on the papers submitted." NYSE RULE 601(h)(iii).

Respondent did submit a request for document production. *See* Dkt. No. 5, Exs. 3, 4, 7. Although the motion for discovery was premature when originally filed, Respondent re-urged its discovery request upon receiving notice that an arbitrator had been appointed.[4]

---

[4]Because Respondent re-urged its discovery request within the time frame for making such a request, the Court will not consider whether the original request, standing alone, would have been effective under the NYSE Rule.

*See* Dkt. No. 5, Ex. 14. Thus, Respondent effectively requested production of a significant number of documents.

Nonetheless, the successful submission of a request for document production does not equate to a guarantee that the arbitrator will order the documents to be produced. Arbitration proceedings "require 'expeditious and summary hearing, with only restricted inquiry into factual issues.'" *Gibbs Oil Co. of Tex.*, 915 F.2d at 1022 (quoting Legion Ins. Co. v. Ins. General Agency, Inc., 822 F.2d 541, 543 (5th Cir. 1987) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 22 (1983))); *see also Peabody Coal Co.*, 2000 WL 178554, at *5 (citing Robbins v. Day, 954 F.2d 679, 685 (11th Cir. 1992)); AT&T Corp. v. Tyco Telecomm. Inc., 255 F.Supp.2d 294, 303 (S.D.N.Y. 2003) (quoting Areca, Inc. v. Oppenheimer & Co., 960 F.Supp. 52, 55 (S.D.N.Y. 1997)). Indeed, the purpose of arbitration proceedings is to promote speed and efficiency, and "[a]rbitrators are not bound by formal rules of procedure and evidence." *Home Ins. Co.*, 278 F.3d at 625 (quoting Nat'l Post Office v. U.S. Postal Serv., 751 F.2d 834, 841 (6th Cir. 1985)); *Peabody Coal Co.*, 2000 WL 178554, at *6 (same); *Gibbs Oil Co. of Tex.*, 915 F.2d at 1022; *Tyco Telecomm. Inc.*, 255 F.Supp.2d at 303 (quoting *Areca, Inc.*, 960 F.Supp. at 55). Furthermore, arbitrators are not required to sacrifice speed or informality in order to permit a party to introduce every piece of relevant evidence. *See Tyco Telecomm. Inc.*, 255 F.Supp.2d at 303 (quoting *Areca, Inc.*, 960 F.Supp. at 55); *see also Gibbs Oil Co. of Tex.*, 915 F.2d at 1022. Although arbitrators may not deny discovery of documents which are central to a dispute, they may conduct only such discovery as they find necessary and can refuse discovery of evidence of uncertain relevance or evidence related to non-merits issues. *See Home Ins. Co.*, 278 F.3d at 625; Burton v. Bush, 614 F.2d 389, 390 (4th Cir. 1980); *Tyco Telecomm. Inc.*, 255 F.Supp.2d at 303; Indemnity Co. v. Affiliated Food Distrib., Inc., No. 96 Civ. 9707(RO), 1997 WL 773712, *4, *5 (S.D.N.Y. Dec. 12, 1997); Chevron Transp. Corp. v. Astro Vencedor Compania Naviera, S.A., 300 F.Supp. 179, 181 (S.D.N.Y. 1969); Cold Mountain Builders, Inc. v. Lewis, 746 A.2d 921, 922 (Me. 2000); 4 AM. JUR. 2D *Alternative Dispute Resolution* § 187 (2006). Finally, a reviewing court may not vacate an award based on relevancy determinations, unless exceptional circumstances exist, the moving party demonstrates the relevance of the evidence sought, and the moving

-11-

party shows the prejudice sustained from the relevancy determination. *See Weber*, 455 F.Supp.2d at 553, 554 (citations omitted).

> In this case, Respondent sought documents to show:
> - Movants received and understood their account statements and investments;
> - Movants received and understood the annuity contract, policies and other documents;
> - the extent of damages—if any—suffered by Movants while they held their account at Edwards;
> - the extent of Movants' investment sophistication;
> - whether Movants failed to fully disclose the extent of their assets;
> - what independent research Movants relied on in selecting their investments;
> - the identity of Movants' other investment accounts, thereby evidencing experience and sophistication;
> - Movants understood and accepted the risk of their investments;
> - Movants accessed and reviewed their accounts online and were aware of their losses; and
> - Movants communicated with third parties about their investments.

Dkt. No. 5, at 7–8. All of Respondent's arguments for vacatur stem from its lack of access to these documents. *Id.* at 5–8. Respondent avers that Movants refused to produce these documents, that the arbitrator failed to rule on its motion for production, and that the arbitrator acted improperly by failing to order production of these documents. *Id.*

The Court finds that Respondent has failed to carry its burden of showing that the lack of production of any documents which may be responsive to its request for production resulted in a fundamentally unfair arbitration proceeding. When, as in this case, the arbitrator opts to not provide reasons for his award, it is the burden of the party seeking vacatur to refute every possible rational basis for the arbitrator's award. *See Peabody Coal Co.*, 2000 WL 178554, at *3 (citing *Merrill Lynch, Pierce, Fenner & Smith v. Jaros*, 70 F.3d 418, 421 (6th Cir. 1995)); *see also Kergosien*, 390 F.3d at 353 (citing *Antwine*, 899 F.2d at 412).

Here, there are numerous grounds upon which the arbitrator could have based his decision not to grant Respondent's request for documents. The arbitrator may have determined that the requested documents were completely irrelevant. He may have

decided that even if Respondent established each of the facts that the requested documents were intended to prove it would not impact the outcome of the case. He may have already concluded that Movants were experienced investors and understood their contract with Respondent, and that the requested documents would therefore be cumulative. He may have decided that none of the requested documents were central to the case, that the case had been pending for too long already, and that he was therefore going to deny the motion to compel on that basis. He even may have taken the discovery dispute into account when fashioning the award.[5] Regardless, this Court finds no evidence to show that Movants withheld any documents which were central to the dispute, that the requested documents were relevant to the outcome of the case, or to show that, even if relevant documents existed, the production of the documents would have changed the outcome of the arbitrator's decision, such that the failure to produce those documents resulted in prejudice to Respondent. Therefore, the Court finds no basis upon which to vacate the arbitrator's determination not to grant Respondent's request for production.

Respondent also fell short of its burden of showing that the arbitrator engaged in misconduct by failing to provide the parties with rulings on its discovery request prior to issuing a decision on the merits. *See* Dkt. No. 7, at 3–4. The arbitrator has no obligation to provide reasons for his awards. *See Refino*, 480 F.Supp. at 565 n.3 (quoting *United Steelworkers of America*, 363 U.S. at 598). Thus, the issuance of a final award in the case effectively acts as a denial of Respondent's request. Moreover, Respondent's argument that the arbitrator was required to issue rulings on the discovery request to the parties is incorrect for two reasons. First, Mr. Rowsell *requested* the arbitrator to provide rulings on the motion before rendering a decision on the merits, the arbitrator was not *required* to do so. *See* Dkt. No. 5, Ex. 16. Second, and more importantly, the arbitrator was asked to contact Mr. Rowsell after ruling on the motion. *See id.* He was *not* asked to inform the parties after making said decision. *Id.* Thus, Respondent has provided no evidence that the arbitrator failed to abide by the request, as he may have informed Mr. Rowsell of his

---

[5]The arbitrator awarded Movants $18,000 for their claims — an amount which is less than their requested figure of $25,000 and considerably less than their claimed "amount of $31,289 plus punitive damages." Dkt. No. 1, Ex. 1, at 2; Dkt. No. 1, Ex. 2.

"rulings prior to rendering any decision on the merits of the case," even if the parties were unaware of the communication between the arbitrator and Mr. Rowsell. As Respondent bears the burden of showing that the arbitrator committed misconduct, the total lack of evidence in the record as to when, or even if, the arbitrator rendered a decision on the motion to compel production of documents compels this Court to assume that such a decision was made. *See Weber*, 455 F.Supp.2d at 549 (citing Lummus Global Amazonas, S.A. v. Aguaytia Energy del Peru, S.R. LTDA., 256 F.Supp.2d 594, 604 (S.D. Tex. 2002) (citing Spector v. Torenberg, 852 F.Supp. 201, 206 (S.D.N.Y. 1994))); Pheng Invs., Inc. v. Rodriquez, 196 S.W.3d 322, 331 (Tex. App. 2006) (citations omitted).

Thus, the Court concludes that Respondent has not made a sufficient showing of either misbehavior by the arbitrator or prejudice to Respondent to warrant vacating the award under 9 U.S.C. § 10(a)(3). Additionally, the Court concludes that there is insufficient evidence to find that the arbitrator failed to resolve the discovery dispute or that there is no possible rational basis upon which the arbitrator could have denied Respondent's motion to compel production of documents.

## C. Confirmation of Arbitrator's Award

Upon reviewing the record and all of the evidence in this case, the Court finds that Respondent received a fundamentally fair arbitration proceeding. The Court also finds that Respondent has not established any of the bases for vacating an arbitration award. Therefore, the Court concludes that the arbitrator's award must be confirmed. *See Kergosien*, 390 F.3d at 353; *Peabody Coal Co.*, 2000 WL 178554, at *2; *Gibbs Oil Co. of Tex.*, 915 F.2d at 1020.

For an arbitration proceeding to be fundamentally fair, the only requirements are that each party receive notice of the proceeding, that each party be given an opportunity to present material evidence and arguments to the arbitrators, and that there is no bias on the part of the arbitrator or arbitrators. *See Peabody Coal Co.*, 2000 WL 178554, at *6 (citing *Bowles Fin. Group, Inc.*, 22 F.3d at 1013); *see also Home Ins. Co.*, 278 F.3d at 625 (quoting *id.*). In this case, both parties not only received notice of the proceeding, but were actively involved in the proceeding. *See, e.g.*, Dkt. No. 5, Exs. 1–17. Respondent also had

-14-

an opportunity to present its case to the arbitrator — it submitted evidence, it filed motions, and it filed a pre-hearing brief. *See, e.g.*, Dkt. No. 5, Exs. 2A–2R, 7, 11, 14, 15. Respondent therefore "had an opportunity to present its claims, including its vigorous argument that additional discovery should be permitted." *Peabody Coal Co.*, 2000 WL 178554, at *6. As discussed above, it was well within the arbitrator's discretionary authority to deny Respondent's request for discovery, and this Court "may conclude that the arbitrator[] found the proposed discovery was not calculated to produce evidence relevant and material to the decision." *Id.*; *see supra* § III.B. Finally, there is no evidence in the record to suggest that the arbitrator was biased against either party.[6] "[T]he arbitration award may not be set aside on the grounds that misconduct by the arbitrator[] resulted in a fundamentally unfair hearing." *Peabody Coal Co.*, 2000 WL 178554, at *6.

There also is no evidence to support vacatur of the arbitration award under any of the statutory or nonstatutory bases. Respondent does not argue, and the Court finds no evidence to suggest, that the award was obtained by corruption, fraud, or undue means. *See* 9 U.S.C. § 10(a)(1). Respondent urges the Court to infer partiality on the part of the arbitrator based on his refusal to order Movants to produce the discovery Respondent requested. *See id.* § 10(a)(2). This Court has already determined, however, that this decision was within the arbitrator's discretion. *See supra* § III.B. According to the record, Respondent never requested a postponement of the hearing in this case.[7] *See* 9 U.S.C.

---

[6]Respondent argues that the arbitrator's alleged refusal to consider its motion to compel and his failure to grant that motion display bias against it. Dkt. No. 5, at 4–5. However, the arbitrator is the "judge[] of the relevance and materiality of the evidence offered," and he was within his discretionary authority to deny Respondent's motion. *Peabody Coal Co.*, 2000 WL 178554, at *5; *see supra* § III.B. Furthermore, Respondent may not rely solely on the outcome of the case as evidence of the arbitrator's bias. *See* Peebles v. Merrill Lynch, Pierce, Fenner & Smith Inc., 431 F.3d 1320, 1326 (11th Cir. 2005) (quoting Univ. Commons–Urbana, Ltd. v. Universal Constr. Inc., 304 F.3d 1331, 1337 (11th Cir. 2002) (quoting O.R. Sec., Inc. v. Prof'l Planning Assocs., Inc., 857 F.2d 742, 747 (11th Cir. 1988))). Thus, Respondent fails to provide any evidence in support of its allegation that the arbitrator was biased against it.

[7]Not only did Respondent not request postponement of a hearing, but the arbitrator delayed ruling on the case until several months after the date by which Mr. Rowsell requested that he render a decision. *See* Dkt. No. 5, Exs. 13, 18.

§ 10(a)(3).  The arbitrator did not "refus[e] to hear evidence pertinent and material to the controversy" or engage in "any other misbehavior by which the rights of any party have been prejudiced."  *Id.*; *see supra* § III.B.  The arbitrator did not exceed his powers.  *See* 9 U.S.C. § 10(a)(4).  There is no evidence that the arbitrator ignored any clear law or precedent in rendering his decision.  *See Kergosien*, 390 F.3d at 355; *Brabham*, 376 F.3d at 381–82; *Tyco Telecomm. Inc.*, 255 F.Supp.2d at 299.  Finally, there is nothing about the proceeding or the award which is contrary to public policy.  *See Kergosien*, 390 F.3d at 353, 357, 358.  Thus, there is no basis upon which this Court may order vacatur of the arbitration award.[8]

## IV.    Conclusion

Based on the foregoing, the Court **GRANTS** Movants' Motion to Confirm Arbitration Award and Motion for Judgment, Dkt. No. 1, and **DENIES** Respondent's Motion to Vacate Arbitration Award, Dkt. No. 5.

DONE at Brownsville, Texas, this 21 day of February, 2007.

Hilda G. Tagle
United States District Judge

---

[8]At worst, it could be argued that the actual award in this case is arbitrary and capricious.  The arbitrator awarded $18,000 in damages for Movants' claims.  *See* Dkt. No. 5, Ex. 18.  It is not clear, from the record, how the arbitrator arrived at this amount.  However, even were this Court to conclude that the award was arbitrary and capricious — a question which the Court has not considered — that would not provide grounds for vacating the award.  *See Brabham*, 376 F.3d at 382.